UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| SARAH MCKINNEY,<br><br>    Plaintiff,<br><br>v.<br><br>LINDSEY MENDOZA,<br><br>    Defendant. | Case No. 22-10204<br>Honorable Laurie J. Michelson |

**OPINION AND ORDER DISMISSING COMPLAINT [1] FOR LACK OF JURISDICTION AND DENYING AS MOOT MOTION FOR SUMMARY JUDGMENT [17]**

On September 27, 2020, Sarah McKinney and Lindsey Mendoza were involved in an automobile accident in Rochester Hills, Michigan. McKinney says that Mendoza's negligence caused the accident, which left her with serious injuries. (ECF No. 1, PageID.3.) So McKinney filed this negligence suit against Mendoza seeking damages under Michigan's No-Fault Insurance Act. (*See id.*) In her complaint, McKinney alleges that this Court has diversity jurisdiction over her claims because she is domiciled in New Mexico while Mendoza is domiciled in Michigan. (*Id.*)

In time, Mendoza moved for summary judgment. (*See* ECF No. 17.) She argues that McKinney was a Michigan resident at the time of the accident and was thus required to carry a Michigan no-fault insurance policy; and because she did not, she is prohibited from filing this suit. (*Id.* at PageID.88.) In the alternative, Mendoza argues that even if considered a non-resident, McKinney was still required to carry a

Michigan no-fault policy due to the amount of time she operated her vehicle in Michigan. (*Id.* at PageID.94.)

Mendoza's motion and McKinney's response revealed that McKinney was a citizen of Michigan when she filed this suit, destroying diversity jurisdiction. Accordingly, the Court will dismiss the case for lack of subject-matter jurisdiction and will deny Mendoza's motion as moot.

**I. Background**

Before addressing the Court's subject-matter jurisdiction, some factual background is helpful.

Mendoza undisputedly resides and is domiciled in Michigan. (ECF No. 1, PageID.2; ECF No. 5, PageID.13.) McKinney pled that she is a resident of and domiciled in New Mexico, but the undisputed facts tell a different story.

McKinney lived with her mother in Farmington, New Mexico until around August 2017. (ECF No. 17, PageID.125, 127.) She went to college in her hometown and graduated with an associate degree in occupational therapy in May 2017. (*Id.* at PageID.128.) After graduation, McKinney became licensed as an occupational therapist in New Mexico. (*Id.* at PageID.129.) But she never worked any occupational therapy jobs there. (*Id.* at PageID.136.) Instead, she applied for positions out-of-state, including in Michigan, where there were more opportunities in her field. (*Id.* at PageID.132.)

McKinney eventually got her Michigan occupational-therapy license in July or August 2017 and then began working in Michigan. (*Id.* at PageID.133–134.)

2

McKinney continued to work in Michigan, on a contract basis, from August 2017 through the time of her accident in September 2020. (*Id.*) She also testified that she had been doing contract work for Expert Care—a Michigan-based occupational therapy company—for around four years at the time of her June 2022 deposition. (*Id.* at PageID.135.) And McKinney never worked any occupational therapy jobs anywhere other than Michigan. (*Id.* at PageID.136.) Although she briefly held licenses in New Mexico and Ohio, she let them lapse sometime in 2021—only her Michigan license remains current. (*Id.* at PageID.129.)

From the end of August 2017 through September 27, 2020—the date of the accident—McKinney leased and lived in an apartment in Livonia, Michigan. (ECF No. 17, PageID.125.) Immediately after the accident, she moved in with her boyfriend at his parents' house in Rochester Hills, Michigan, so "he could help take care of [her]" and tend to her injuries. (*Id.* at PageID.124.) She and her boyfriend purchased a home in Michigan in November 2021. (*Id.* at PageID.123.)

From January through September 2020, McKinney left Michigan on five short trips—but no trip lasted more than a few weeks. (*Id.* at PageID.149, 153–155.)

McKinney says that the COVID-19 lockdowns prevented her from visiting New Mexico until a trip in July 2020. (ECF No. 17, PageID.146–147.) During that trip she says, "she went home, took care of some business, saw [her] family, and was making a plan for moving either back home or finding a contract elsewhere, as things were falling apart in Michigan." (*Id.* at PageID.147.) McKinney felt like her occupational therapy contracts in Michigan "were not what they were promised to be," and that

3

maybe moving somewhere with less restrictive COVID-19 "precautions would offer more opportunity for [her] to actually work and not struggle economically." (*Id.* at PageID.148.) McKinney indicated that she came to Michigan to work with kids with disabilities and make a difference in their lives, and to ultimately take that experience back to "New Mexico, where those programs are significantly limited." (*Id.* at PageID.240.)

At the time of the car accident, McKinney's car was registered and insured in New Mexico. (ECF No. 17, PageID.172.) According to McKinney, she maintained a car insurance policy in New Mexico because "she still considers [herself] a New Mexico resident and had planned on going back home" and she did not "intend on becoming a Michigan resident." (*Id.* PageID.237–239.) She also kept a New Mexico driver's license, a New Mexico bank account with her mother, a New Mexico voter registration, and says she kept a permanent mailing address at her mother's house in New Mexico. (*Id.* at PageID.172, 238–240; ECF Nos. 20-3, 20-4, 20-5.) McKinney's credit card and Michigan occupational-therapy license both listed her mother's New Mexico address. (ECF Nos. 20-2, 20-6.) In 2021, McKinney got a Michigan driver's license and a Michigan no-fault car insurance policy. (ECF No. 17, PageID.159, 161, 172.) She also indicated that she believed she transferred her voter registration to Michigan around that time as well. (*Id.*) And although she and her boyfriend purchased a house in Michigan in November 2021, she maintains that she does not plan on staying in Michigan forever and is only staying while her boyfriend builds his

4

work experience and until they have the financial ability to move somewhere else. (*Id.* at PageID.241.)

McKinney filed this negligence suit on February 1, 2022. (*See* ECF No. 1.) In time, Mendoza filed a motion for summary judgment arguing, among other things, that McKinney was a resident of Michigan, and as a Michigan resident, she was precluded from filing this action because she failed to carry no-fault insurance as required by the Michigan No-Fault Insurance Act. (*See* ECF No. 17.) In her opposition, McKinney maintained that fact issues remained as to whether she was a resident of (or domiciled) in New Mexico at the time of the accident, such that she was not precluded from bringing this suit under Michigan law. (*See* ECF No. 20.) While neither party raised the issue of this Court's subject-matter jurisdiction, the arguments about whether McKinney was domiciled in Michigan or New Mexico for purposes of Michigan no-fault law largely mirror arguments regarding diversity citizenship.

## II. Subject-Matter Jurisdiction

This Court has "an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). "In the absence of jurisdiction, this Court's only function is to announce the lack of jurisdiction and dismiss . . . the case." *United States v. 1308 Selby Lane, Knoxville, TN 37922*, 675 F. App'x 546, 547 (6th Cir. 2017).

Where, as here, the asserted basis of jurisdiction is diversity of citizenship, a plaintiff must establish that "the dispute is between citizens of different states," and that "the matter in controversy exceeds $75,000 in value." *See Stryker Emp. Co., LLC v. Abbas*, 60 F.4th 372, 380 (6th Cir. 2023) (quoting 28 U.S.C. § 1332(a)). Under the diversity statute, "there must be complete diversity such that no plaintiff is a citizen of the same state as any defendant." *V & M Star, LP v. Centimark Corp.*, 596 F.3d 354, 355 (6th Cir. 2010). Diversity is assessed on the facts as they existed at time the complaint was filed. *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 569–70 (2004). There is no question in the present action that McKinney has adequately pled the amount in controversy or that Mendoza is a citizen of Michigan. What is in question is McKinney's citizenship.

The citizenship of an individual for diversity purposes is his or her state of domicile. *Napletana v. Hillsdale Coll.*, 385 F.2d 871, 872 (6th Cir. 1967). "To acquire a domicile within a particular state, a person must be physically present in the state and must have either the intention to make his home there indefinitely or the absence of an intention to make his home elsewhere." *See Stifel v. Hopkins*, 477 F.2d 1116, 1120 (6th Cir. 1973) (citing *Gilbert v. David*, 235 U.S. 561, 569–70 (1915)); *see also Farmer v. Fisher*, 386 F. App'x 554, 557 (6th Cir. 2010); *TAA Fairlane Prop., LLC v. Liberty Mut. Ins. Co.*, No. 22-12012, 2022 WL 4455544, at *1 (E.D. Mich. Sept. 23, 2022). "Generally, an individual's 'domicile' is his 'true, fixed, and permanent home and principal establishment.' It is the place to which he returns whenever he is

6

absent." *Eastman v. Univ. of Mich.*, 30 F.3d 670, 672–73 (6th Cir. 1994) (internal citations omitted).

When evaluating diversity-jurisdiction, "courts typically consider a variety of factors indicating the extent of a particular party's ties to the purported domicile." *Persinger v. Extendicare Health Servs., Inc.*, 539 F. Supp. 2d 995, 997 (S.D. Ohio 2008). These factors include, but are not limited to:

> [c]urrent residence; voting registration and voting practices; location of personal and real property; location of brokerage and bank accounts; membership in unions; fraternal organizations, churches, clubs and other associations; place of employment or business; driver licenses and other automobile registration; [and] payment of taxes.

*Id.* (citing 13B Charles A. Wright, Arthur R. Miller, and Edward H. Cooper, Federal Practice and Procedure § 3612 (2d ed. 1984)).

In considering these factors, the Sixth Circuit has found that ownership of a home in a state, regular or consistent physical presence in a state, and infrequent trips to other claimed states of domicile (where an individual had inherited property) was sufficient to establish domicile. *See Deasy v. Louisville & Jefferson Cnty. Metro. Sewer Dist.*, 47 F. App'x 726, 728 (6th Cir. 2002).

The record in this case reveals that McKinney was domiciled in Michigan at the time she filed this lawsuit in February 2022.

True, McKinney points to some facts that could support her allegation that she was domiciled in New Mexico. She took two trips to New Mexico, each for a few weeks, in 2020 and said that during her July 2020 trip "she went home, took care of some business, saw [her] family, and was making a plan for moving either back home or

finding a contract elsewhere, as things were falling apart in Michigan." (ECF No. 17, PageID.147.) She also stated that her mother's New Mexico home was her permanent address, and she kept a New Mexico bank account she shared with her mother. (*Id.* at PageID.172, 238–240.) McKinney's Michigan apartment lease, credit card, and Michigan occupational therapy license listed her mother's New Mexico address. (*Id.* at PageID.174; ECF Nos. 20-2, 20-6.) And she testified that when she moved to Michigan she never intended to remain there—her plan was to learn what she could in a state with good occupational therapy programs and take that knowledge and experience back to New Mexico. (ECF No. 17, PageID.147.)

But the uncontroverted facts, on balance, establish that McKinney was living and working in Michigan indefinitely with no real plan to return to New Mexico or to move anywhere else at the time she filed this suit.

For one, the New Mexico connections are not as clear cut as McKinney makes them out to be. True, she says she kept a permanent mailing address at her mom's house, but her mom was forwarding mail to her (by various means) while she was in Michigan. (ECF No. 17, PageID.173–174.) And McKinney's travel to New Mexico was infrequent. She went only twice in 2020, both times by plane while her car remained in Michigan, which indicates an intent to return. (*Id.* at PageID.146–149); *see Deasy*, 47 F. App'x at 728 (finding the infrequency of trips to Tennessee relevant to determining present domicile in Kentucky when individual was at best only physically present in Tennessee on weekends).

8

Importantly, at the time the complaint was filed, McKinney had been living, working, and receiving services in Michigan consistently since August 2017—almost five years. (ECF No. 17, PageID.126.) From August 2017 through the September 2020 accident, McKinney leased and lived in an apartment in Livonia, Michigan. (*Id.* at PageID.125.) Following the accident, she moved in with her boyfriend at his parents' house in Rochester Hills, Michigan. (*Id.* at PageID.123.) Even more convincing, in November 2021, McKinney and her boyfriend purchased a new home together in Wales Township, Michigan. (*Id.*) McKinney also testified that she worked primarily for a company called Expert Care, based in Troy, Michigan, for around four years from the date of her June 2022 deposition. (*Id.* at PageID.135.) Her work there mainly consisted of home-care services she provided in the Hamtramck, Detroit, and Redford areas. (*Id.*) And McKinney listed her Michigan addresses as her place of residence on her 2019 and 2020 tax returns, as well as on medical records from before the accident. (*Id.* at PageID.247–251; ECF No. 21, PageID.317, 320.) She also had health insurance coverage in Michigan and received health treatment from Michigan providers. (ECF No. 17, PageID.169, 245–251.)

For two, many of the facts McKinney relies on to establish residency or domicile on the date of the accident had gone stale by the time she filed this suit. In addition to owning a home in Michigan with her boyfriend, McKinney had transferred her driver's license, voter registration, and vehicle insurance to Michigan. (*Id.* at PageID.123, 159, 161, 172.) And although she at one point had New Mexico and Ohio occupational-therapy licenses, she never worked in those states. Indeed, she concedes

9

she never worked occupational-therapy jobs in any state but Michigan. (ECF No. 17, PageID.136.) Notably, she let her Ohio and New Mexico licenses lapse in 2021—only her Michigan license remained active at the time she filed this suit. (*Id.*)

Yet McKinney still maintains she does not intend on staying in Michigan and intended on returning to New Mexico or moving elsewhere.

When evaluating an individual's intent to establish domicile, courts consider a variety of factors, including "affidavits of intention, transfer requests, registration for driver's licenses, opening bank accounts, addressing tax returns, motive for establishing domicile, and other physical facts evidencing . . . the desire to remain . . . ." *Stifel v. Hopkins*, 477 F.2d 1116, 1122 (6th Cir. 1973). "A party's subjective statement of intent to establish [or not] domicile, while given 'full and fair consideration,' is subject to judicial skepticism and is accorded little weight when contradicted by objective facts or the party's actual conduct." *Smith v. Smith*, 526 F. Supp. 3d 263, 266–67 (E.D. Mich. 2021), *reconsideration denied*, No. 19-10330, 2021 WL 5629979 (E.D. Mich. Dec. 1, 2021) (citing *District of Columbia v. Murphy*, 314 U.S. 441, 456 (1941)); *see also Willis v. Westin Hotel Co.*, 651 F. Supp. 598, 601 (S.D.N.Y. 1986) ("Although intent is crucial to domicile, mere subjective statements of affiliation with a particular state or of intent to make it one's home, of course, cannot suffice for a finding of state citizenship if such statements are belied by objective indicia of actual residence and intent.").

McKinney's strongest evidence of intent to return to New Mexico was a statement that during her July 2020 trip to New Mexico, she "was making a plan for

10

moving either back home or finding a contract elsewhere, as things were falling apart in Michigan." (ECF No. 17, PageID.147.) But even this statement indicates McKinney never had a definite or concrete plan to return to New Mexico. To the contrary, she indicated she was making plans to potentially move somewhere else, i.e. wherever she could find good occupational therapy contracts because the COVID-19 pandemic had inhibited her work in Michigan—and she further admitted that she was looking for places with fewer COVID-19 restrictions and that she believed New Mexico had similar COVID-19 restrictions to Michigan. (*Id.* at PageID.148.) A generalized statement that in July 2020—almost two years before this lawsuit was filed—she was considering leaving Michigan to an undetermined state due to the impact of the COVID-19 restrictions on her work is far from sufficient indicia of intent to establish an intent to return to New Mexico, particularly when she indicated that she thought New Mexico's restrictions were largely the same or worse than Michigan's. (*Id.* at PageID.241 ("With the COVID things New Mexico has like extra gone downhill.").) And, by June 2021, most of Michigan's COVID-19 restrictions were lifted. Press Release, Governor Gretchen Whitmer, *Gov. Whitmer Announces State will Open to Full Capacity on June 22* (June 17, 2021), https://perma.cc/LM9G-YAMJ.

Whatever her intent may have been during the COVID-19 pandemic, McKinney's actions after pandemic restrictions were lifted were completely inconsistent with an intent to leave. *Mallon v. Lutz*, 217 F. Supp. 454, 456 (E.D. Mich. 1963) ("[S]elf-serving declarations of intent may be negatived by other acts inconsistent with such pronouncements."). Eventually, McKinney's work in Michigan

11

appears to have picked up, and by February 2022, she had let her New Mexico occupational-therapy license lapse, leaving only her Michigan license active, she purchased a home in Michigan with her long-term boyfriend, and transferred her vehicle insurance, and driver's license to Michigan. All these facts evince an intent to remain in Michigan indefinitely. This is not inconsistent with her June 2022 deposition testimony that she and her boyfriend do not intend on staying in Michigan forever and are only here while he builds his work experience and until they have the financial ability to move elsewhere. (ECF No. 17, PageID.241.) In other words, this statement does nothing to establish that McKinney was domiciled in New Mexico or anywhere other than Michigan. McKinney need not have an intention to stay in Michigan forever to be domiciled here. When the facts show, as they do here, that she resides and works exclusively in the state, owns a home with her boyfriend in the state, infrequently travels out of the state, and has an intention to stay in the state indefinitely with no specific plans to move anywhere else—that is enough to establish she is domiciled in Michigan. *See Deasy v. Louisville & Jefferson Cnty. Metro. Sewer Dist.*, 47 F. App'x 726, 728 (6th Cir. 2002). To the extent McKinney made any clear statements of intent to return to New Mexico, they are overcome by the objective evidence indicating she had no such intentions.

In sum, the objective indicia of actual residence and intent overwhelmingly show that McKinney is indefinitely living, residing, working, and making a home in Michigan. She owns a house in Michigan where she lives with her boyfriend, she has continuously lived and worked exclusively in Michigan for over five years, she let her

12

New Mexico occupational therapy license lapse in 2021, she transferred her vehicle insurance to Michigan, she has a Michigan driver's license, she filed tax returns listing her Michigan address, she has health insurance and receives health care in Michigan, and she only takes infrequent short trips out of state to visit friends and family. Together, these uncontroverted facts establish that McKinney was in fact domiciled in Michigan as of February 2022. Thus, diversity jurisdiction is lacking.

### III. Conclusion

For these reasons, McKinney's claims are DISMISSED without prejudice for lack of subject-matter jurisdiction. As a result, Mendoza's motion for summary judgment is DENIED as moot.

SO ORDERED.

Dated: July 27, 2023

s/Laurie J. Michelson<br>
LAURIE J. MICHELSON<br>
UNITED STATES DISTRICT JUDGE